May it please the court, Nicholas Markey on behalf of Mr. Jesus Villa-Meraz, your honors, this is a petition for review from a decision by the Board of Immigration Appeals affirming the immigration judge's denial of Mr. Villa- Meraz's applications for asylum withholding and CAT and deferral. In 2014 in August, Mr. Villa-Meraz was detained at the border, I believe it was possibly San Ysidro, without having possession of a valid border crossing card. He was placed into removal proceedings, I believe in September 2014. He applied for asylum withholding and CAT. After a individual hearing on the application, all applications, and entered removal. He then subsequently appealed that to the BIA and they affirmed. The basis of the claim, your honors, is that Mr. Jesus Villa-Meraz had two brothers. They were both killed in Mexico. One brother, Manuel, was involved in politics and he was killed in May of 2011. He was working as... Is it a brother and a brother-in-law or two brothers? Brother and a brother-in-law. And the murders were very sensational and very public? Yes. And then there's this kidnapping? Yes, your honor. Of your client. That strikes me as, to save time, I'm going to say that I find it extreme. Yes, your honor. So can you talk to me about the nexus? The nexus is, your honors... Talk to us about nexus, please. Yes, your honor. The nexus is twofold in this case. Our position is that Mr. Villa-Meraz tied the nexus to imputed political opinion because it ties to his brother, Manuel, and the brother-in-law, who was also killed. Because the brother-in-law worked with Manuel. Now, we tied to an imputed position and it's also, it would tie through the family. As the court knows, two brothers were murdered. Mr. Villa-Meraz was kidnapped and held for a month and a half. So that's where we believe that the nexus established. The... I know the government maintains that this is not a mixed motive case, but I believe that it is because you do have two motives. Number one, you have the motive of the death of Manuel and his brother, or brother-in-law, and then the issue of the These are terrible cases that's happened to this family. However, here again, they're citing to the general violence in nature and private individuals causing that violence because, in this case, a ransom occurred. I can't get around that fact that the ransom did occur and my client paid it, but it's our position that because of... Your client's sister paid it. So can I ask you about that? Your client ran away. He fled after his brother was murdered. Then his brother-in-law was murdered about a year later, but he ran off to... He was in a papaya farm a good distance away and he was fine for about three years. Then, as I understand it, he was stopped by the police. He gave his identification. His speculation, circumstantial evidence, to be sure, is that that outed him, right? Yes. And then there's this terrible kidnapping. Yes. Truly terrible kidnapping. What is the evidence about how they knew to contact his sister for the ransom? The evidence comes from... The evidence would come from, I believe, the testimony of the respondent that they, because of the family relationship, they knew the family, i.e. because Manuel was into the politics and he was well-known. Can I ask it this way? Yes. Is there anything in the record that indicates... Your client was found credible? Yes, he was found credible. Is there anything in the record to indicate that he told them about his sister or his family or how to contact her? I don't believe so, Your Honor. So let's assume that the kidnapping and then holding for ransom is connected to family. That is to say, as soon as they know, okay, this is the brother and brother-in-law of the two men who have been killed, we're gonna target him. We're gonna kidnap him. We're gonna hold him for ransom. So we now... They have that connection. As soon as he sort of reveals his name and address, that alerts the gang. They get him. The government's argument is that... But they didn't target him because of the family connection and political opposition. They targeted him because they wanted the money. Now, let's assume that this is slightly different and instead of kidnapping him, they had said, you know, we don't like your brother, we don't like your brother-in-law, and we don't like you. We're gonna be nice to you. We're not gonna kill you. But would you please give us $150,000? How's that different from kidnapping? And I want the government to hear the question too because if the argument from the government side is all they want is money, well, they're clearly imposing significant hardship on him by asking for the money. And why are they imposing significant hardship on them? Well, maybe because they want the money, but maybe also because they don't like the family, they don't like the family's political involvement. And that's what I would say, right? That's the argument. That's the argument. And if we're talking asylum, we can get to withholding in a minute. If we're talking asylum, we need to show that it is a central motive. Is that right? Yes. Not the central motive. Right. And what does a central motive mean? I mean, 40%? I mean, what do we know about a central? What does that mean? I think that that is a, you know, more than 50% or not that high, but it is. No, if it's more than 50%, that means the central. Right. Don't get that away. Right. So what I'm saying is there isn't any percentage amount. It's just if you show that there is a central reason, you've established it. And here, because the brother, Manuel, was part of the politics, I think we have shown it. And that would tie in. The other thing that might cut in your favor, but it sort of cuts two ways, and I'd like you to both have an opportunity. There's another, the elderly father and other brother that haven't been harmed, they live outside of the area also. And, you know, the difference seems to be because the other male members of the family have met, you know, very serious consequences here. But these two have not. And there wasn't a police stop or anything else that indicated who those two were. And your client was fine for three years on the papaya farm until he was stopped by the police and identified. So when we go back to Judge Fletcher's point about a central reason and whether the family connection is a central reason, is that part of what we should be considering? I think the court should, with regards to the father, I think there was testimony and evidence placed in that he lived off in the mountains and was off away from the city centers and keeping away from those areas. And your client moved to a papaya farm and he was fine, too, for three years until he was stopped by the police. Right. And would, one could speculate that that would happen to his father if he came down to the municipality. Well, but I guess what I'm saying is we talk about, okay, it could be this, it could be that, and it's all out there. The standard is going to be on the, it's going to be compelling. You've got to compel. So, and then we have a central reason and then what the, I guess for withholding it's a little bit, a little lower in terms of the reason. So if there's really a couple of ways that you can explain it, how do I get to where you want us to go? Because the BIA, because they did give an explanation of how they saw it another way. And they're actually seeing the evidence. And those of us that have been trial judges know that when you hear things, sometimes they're different than when you, when the advocates come and just talk about the record. So if I'm looking at compel, how do I, if it looks like they were considering two different explanations, both of which could have some support in the evidence, how does it compel? I think it compels when you tie it to the political issue that comes up with Manuel. Well, you're basically saying there's only one way to look at it, I guess is what you're saying. And the BIA did go, they didn't go without an explanation the other way. They, I mean, they did, you know, whether you agree with it or not, I mean, I guess that the BIA did come up with another way that they looked at it. So I'm just wondering, does that defeat your compel argument? I don't think it does, Your Honor. They look at it as the general violent nature of the, you know, gangs and gangs doing bad things to normal people. Here we have different fact settings where it's an entire family that's being targeted and that family is political. So I would say that their reliance that this was, they focused on the ransom and saying that this was merely a money generating operation to ransom, kidnap people and get ransom. However, if that's the case, why would they keep him for a month and a half and torture him? So there's another reason. It doesn't seem to me to be quite the same as other asylum slash, you know, withholding claims based on political opinion. It's as though the claim is really a family claim and there's a, it's a politically prominent family that his involvement in politics made them very visible and prominent. But I don't, is that fair? Yes. And that's in art, artfully what I'm saying is that's how I'm tying it in because, you know, there, there was, the family had this construction business with the heavy equipment, the brother Manuel did things, his brother-in-law assisted him, two are dead, one's kidnapped and kept for a month and a half and beaten. So what about on the cat claim? The, the BIA made a finding that Villamaraz did not submit any evidence that he would be singled out for torture. Is, is that enough of a hook for you? Does, it's hard to believe that they really could have said that there was some evidence. There was quite a bit of evidence. Well, but I mean, I, what I, I guess what I'm saying is there could be arguments both ways to look at the other things, but to say there was no evidence on the cat claim, does that mean they just said that everything that had happened up to that point didn't, it wasn't, they weren't considering it or what do they mean? Again, the BIA, I would say that they didn't even consider it even though it was there. You had the evidence, you had the testimony, you had the credible testimony of my client, as well as family members and documentation that supported it. So I'm saying that the BIA, when they said there was no evidence, is totally incorrect. Okay, because he was kidnapped because when he was released finally after his sister paying the ransom, they said, if you come back, we're going to kill you next time. Is that what we're talking about? Is there anything else that we're missing? In addition, the, the comments of the immigration judge at, I believe it was AR-64 where he said that the government does, there is documentation that supports that the government does acquiesce to this type of behavior. So as I read it, we have a holding of, that there is no acquiescence, but there's an awful lot of evidence that the government does acquiesce, even participate. Indeed, his evidence is, at least strongly suggests, that the only reason these guys were able to find him was that once he revealed his identity to the government, bingo, they got him. Exactly. That's more than acquiescence, that's participation. And that's what we're saying. But she reported, the mom reported, mother, reported this to the military, not to the police, I noticed. And, and it seems to be that, that the allegation is that the police were in cahoots, to follow up on Judge Fletcher's question, but she felt that it was, she could go to the military, they just couldn't do anything. They were ineffectual. From this record, I don't know that she meant military or law enforcement. Excuse me, I'm not asking a question, I'm not being articulate, here's what I mean. When we talk about the government, to follow up on Judge Fletcher's question, and you answered his question, do you, do you mean government police, or do you mean government military? What are you referring to when you say the acquiescent? Both. The military and the government work on all avenues of law enforcement, as we see. What evidence is there of the military acquiescence? As opposed to not being able to do anything. I think, the only evidence that would have been submitted, would have been the documentary evidence that was submitted by prior counsel. I would submit that, that doesn't address a lot of the military, but it does address the law. I mean, you don't have to show, if they're unable or unwilling, either one works, but it distracts me. Maybe I'm splitting hairs, but. And I'm not sure that if the military half-heartedly tried, but it was unable to do something, but the police actively participates, I'm not sure that defeats a claim of acquiescence. The fact that the military didn't do much. Exactly. Okay. Let's hear from the other side. Yes, Your Honor. Good morning again, Your Honors. Michael Heiss on behalf of the. Let's start from the back end and talk about, C.A.T. because it seems to me that BIA just missed it. Uh, no. I'm following up on Judge Callan's question. I'm at the very end of the BIA decision. Furthermore, the respondent did not submit any evidence to establish that more likely than not, anyone in Mexico would single him out for torture in the event of his return. There was some evidence. He submitted some evidence. Evidence of past allegations. Listen to what I just read. He did not submit any evidence to establish that it is more likely than not, that anyone would single him out for torture in the event of his return. In the future. That's what return means. Right. Yes. Discussions of past torture or allegations of past torture. He claims that his kidnapping rose to the level of torture. The agency found that it did not. Which strikes me as extraordinary counsel. I just want to put that on the table for you  But. But. I understand. Here's the answer, if I could engage you on. He has this horrible kidnapping. He didn't escape. His sister paid the ransom. They let him go in the middle of nowhere. And his testimony found credible by the immigration court was that he was told, if you come back, we're going to kill you next time. So how is that not any evidence that there will be torture in the future? The lack of any more recent threats. You know, don't defend the indefensible. They they're wrong on that point. So we have to deal with what happens, what that means that he's wrong. They're wrong on that point. I thought they might have meant something about the the duration here. But this is pretty recent. This is 2014 kidnapping. You know, sometimes we see these in its 20 years. But but this is pretty recent. The facts here are worse than in some cases, actually. There's a lot of cases that are pretty slim. But this and he was found credible. And it it does seem though we don't re-weigh the evidence. And the BIA does give some explanations as to how it can be looked at differently. But it does seem somewhat of an anomaly to say that there wasn't any evidence of I mean, this what this petitioner had more than I've seen a lot of people. A lot of people come in pretty thin. But there was a lot that happened to this family and and to him personally. And well, we're talking about a lot of different standards here. Whether or not past events rose to the level of torture ultimately is the question of whether or not it's suggestive of future torture. And even assuming the agency erred with respect to the the absence of evidence of future torture, the question then assume that's true, assume that the agency got that wrong. Did the agency err on the question of whether or not the government would acquiesce to that torture? And the immigration judge explicitly said no, that the Mexican government is actively prosecuting these types of crimes. And there's not very successfully if we look at the and I don't measure. I don't doubt their sincerity, their efforts. But these these newspaper reports and what I'm going to call them country conditions report, although I'm losing using that term loosely, because there's a whole lot more than that here. It's extraordinary. The number of public officials that have been murdered, the number of mayors and whatnot. So what is your response to that, please? The effort is ongoing. About the government's ability. Right. Inability means completely unable. The effort is there. It's an ongoing difficult situation. Excuse me. Effort and success are different. And the fact that the effort is there is meaningless if there's no success whatsoever. So don't say that effort is enough to do it. There has to be some ability. Yes. But that's the other end of the extreme. Your Honor said no success. But there has been some that they have prosecuted these individuals. The head of the Zetas cartel. Where do you want me to look in the record for that, please? Unfortunately, I don't have the exact page site. But the country conditions report, I believe, for Mexico, the most recent one as of this. If it's the country conditions report I've read, that's fine. Thank you. Yes. The question here ultimately is the weight of the evidence, as Judge Callahan was asking or pointing out, that the standard is whether or not the record compels finding a nexus to a protected ground here. This is no longer talking about CAT. We're talking about... Right. In general. With respect to CAT, essentially, the court clearly believes that the agency got it wrong with respect to the absence of evidence of future torture. But the question then is on the acquiescence point. If the court disagrees on that, it should remand to the agency for it to consider. Can we talk about withholding and nexus? Asylum and then withholding? Or start with withholding? The one I'm interested in is withholding. The standards are slightly different. Asylum, generally, if you don't get that one, you don't qualify for withholding. And the question here is whether or not substantial evidence supports compelling the conclusion that petitioner faces future or suffered past persecution based on a protected ground. Mostly his family. The imputed political opinion is a bit tangential to the family claim. With respect to reason, am I wrong in thinking that, quite oddly, actually, that if it's asylum, it has to be a central ground, and if it's withholding, it has to be a ground? Right. That's the Barajas-Romero... Right. So when you say that if you don't get one, you don't get the other, that's not really true. It's a little bit different. It's less true now than it used to be. Correct. So if we're in withholding, this is what we're both driving at. If we're in with the land of withholding, just within that sort of category, and this doesn't have to be a central reason, but just one reason, this being this prominent family connection, what's your best answer there on the connexions? The agency found that the social group membership, again, there was no question about the viability of the social group itself. The agency found that the social group membership was not a reason at all. Okay. So let's talk about that, because now we're where I want to be. For me, this is the hard part of the case. Sure. This petitioner fled after his prominent brother was murdered. Then we have these newspaper accounts and really gory photos showing there's another, a second, very spectacular, demonstrative murder, I would say. Somebody's trying to make a point. He fled, though, and he was okay for three years on a papaya farm until he was stopped by the police. Circumstantial evidence. Right. But it seems to me to be maybe pretty significant, because two other members of his and it hadn't been, weren't so identifiable. They were fine, too. So why shouldn't I think that's important for the nexus analysis, at least for withholding? It's important for both asylum and withholding. This court's decision in Hakeem, and it's been treated the same way for decades now, that family members, especially similarly situated family members, remaining in the alien's home country unharmed absolutely informs the reasonableness of the harm the alien claims to now fear. But do you understand what I'm saying about the father and other brother? It cuts both ways. It cuts both ways. Again, that's a question of weight, whether or not they're similarly situated. Petitioner claims he's more closely aligned to Manuel and Jesus Manuel because he worked with them, and they didn't. That's the only hook. It's not the only hook, because here's what I'm trying to get at. When he was, why else do you go out of your way to kidnap a papaya farmer, right, until you realize what his family connection is? He was fine for three years. Why would they think that this papaya farmer would have access, his family would have access, or know how to find his family, by the way, know how to find his sister, and then to ransom, you know, demand 500,000 pesos? Well, getting back to what we were discussing earlier about the rampant crime in Mexico, yes, serious crime is an ongoing issue in Mexico generally. Kidnapping is extremely common. Yeah, but they're going to target somebody whose family can come up with a ransom, right? That's my point. Perhaps, they target anyone. They will ask for whatever they can get. That they happen to have picked this individual, again, it's a question of weight, whether or not he made that connection, whether or not there was enough here to overcome that. Kidnapping is unfortunately very common. That he happened to have a past that they believe, and that they subjectively believe these things doesn't make them necessarily objectively true. The statute requires credible testimony that is also persuasive, credible evidence that is persuasive. A lot of coincidence. It's a whole lot of coincidence. The coincidence is crime in Mexico as well, and that's the agency's point. And the unfortunate nature of these things, what Your Honor was pointing out earlier, Judge Fletcher was asking the hypothetical of if the gangs came to the family and said, we don't like you. Well, that's obvious. That's the connection there. They're telling you what the connection is. We don't have that here. We have the family saying, well, these were similar trucks. They were dressed similarly. But then you have the two murders of two individuals that were much more politically active, and then this individual, this petitioner that wasn't. So what if I change my variation slightly so that it is, we have killed your brother and your brother-in-law, and now we know who you are, and we would like $150,000, please? Oh, 150,000 pesos. I'm making up the number. Yeah, sure. Well, that's a substantial sum of money. Either way, it is a substantial money. I think here was $15,000. Yeah, I don't care about the amount of money. What I care about is they say, we killed your brother, we killed your brother-in-law, and now we know who you are. Give us money. Well, if they said that, if that were in the record, then we probably wouldn't be here. That's evidence of nexus, but they have no mention here. I think we've got enough evidence to know that they killed the brother. We have enough evidence to know they killed the brother-in-law, and we have enough evidence to know that they don't come after him until they know who he is, which is to say, related to the two people who are dead. So I'm assuming, based on the evidence here that's very strong, that when they came after him, they knew exactly who he was and that he was related to the two people that they had killed. I'm not entirely certain of the timing of the police identification of him and when he was kidnapped, how far apart that was. But again, that's all speculation. Your Honor says that that's very strong evidence. Again, this is speculative. He's assuming— I'm not one to—I don't like to get a gotcha on judges just because I've been a judge in a trial court, and there aren't always, like, magic words. But it does seem that with all of the things that we've talked about and that he was found credible, it does seem very weird that the judge would have said, did not submit any evidence—any—that would be singled out for torture. So if you said you're credible, that, I mean, it just seems—and so I'm wondering, for me, it's hard to say, is that a cursory conclusion or is it a failure to consider all of the evidence if you just say there isn't any? I mean, it's hard for me to believe that a judge could forget that two people got murdered from then until now, but any—that would not be a case that I would likely—I might say, well, I'm not persuaded that it's sufficient or I see other explanations. And—but he did present evidence, and I do believe that what happened to him happened to him. You know, I do believe that they died. I do believe that he got kidnapped. I do believe all of that. Right. And—but blah, blah, blah. But to say, but you haven't given us any evidence, it's like, were you there? Well, the board wasn't there, and there's two—well, several pieces to answer your question. But there was evidence. There was evidence that supported his position. It wasn't—it wasn't as evidence-free as some things we see. There are things where people—they're pretty slim reads. To get to that point, I think the—to your point would be that the immigration judge would need to have found that his past kidnapping constitutes torture. The IJ found that it did not. So— That's not going to be fertile ground. Your Honor disagrees with that, but again, that's— I mean, what's missing? To get to that point is a different question. But we're also talking about asylum withholding versus CAT. And what harm rises to the level of torture is higher than what rises to the level of harm that rises to the level of persecution. It's an extreme form of harm. But this person was kidnapped and held for six weeks in a dark room. Not arguing about whether that qualifies. At this point, the court clearly believes that that constitutes past torture. And you're saying you're not arguing because you think— The government submits that it is—did not rise to the level of past torture. But I'm just trying to save us all time debating it with you. Okay. Appreciate that. Not a concession, but— Correct. Good use of time. Which I am clearly over, and I appreciate your Honor's allowing me to finish here. The question is whether or not the agency—I think what your Honor was asking earlier was about the discussion of the facts, and we have an immigration judge's decision here that all of the facts. And then three pages applying them. This is not your—I've seen less from immigration judges, put it that way. And we have the board that adopted and affirmed the immigration judge's decision, so the court is considering both. Ultimately, the question is whether or not this record compels a contrary conclusion. And given that crime is indeed a substantial problem in Mexico, that was the conclusion that the agency found was the reason the petitioner was targeted. That they believe these things is a subjective belief that the agency did not find persuasive, which is required under the statute. Thank you, Your Honor. Thank you. Thank you. Would you put two minutes on the clock, please? Nothing further. Nothing further. Okay. Okay. Thank you. Rodriguez-Valla, submitted.
judges: W. Fletcher, Callahan, Christen